IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02134-CMA-MJW

NICK SMITH-BEY,

Plaintiff,

v.

VICKI JARRETT and WARDEN STEVE HARTLEY,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' COMBINED MOTION TO DISMISS AND MEMORANDUM BRIEF IN
SUPPORT OF MOTION TO DISMISS (Docket No. 15)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Christine M. Arguello on November 21, 2008.

(Docket No. 12).

In the Amended Prisoner Complaint (Docket No. 8) brought pursuant to 42

U.S.C. § 1983, the pro se incarcerated plaintiff, Nick Smith-Bey, raises a claim of

"Religious Discrimination" (Docket No. 8 at 4), asserting the following.  After the morning

session of a computer class on July 27, 2007, plaintiff informed the instructor, defendant

Vicki Jarrett, that he needed to attend his Moorish Science studies that afternoon.

Jarrett responded that she would never have hired plaintiff if she knew he went to

Muslim services on Friday.  She gave plaintiff an ultimatum that if he went to religious

services that afternoon, he would be fired from her class.  By the next Monday, plaintiff

was so fired, which put him on the bottom of the single cell list, placed him on 23-hour

lock down for becoming "unassigned," and caused him to start losing "good-time earned-time."

Plaintiff utilized the grievance procedure and also contacted defendant Warden Steve Hartley by letter. By August 28, 2007, a memorandum was issued telling Jarrett that plaintiff was not to be excluded from her class. The following day, however, when plaintiff went to class, Jarrett was irate and informed plaintiff that it was her class, and plaintiff was again not allowed in the class. "Warden Steve Harltey is the Head Administrator <u>who</u> had the last word on the grievance procedure Also, <u>who</u> allowed me to be punished after Aug 29. for attending Juma Services." (Docket No. 8 at 4).

As relief, plaintiff requests "$50 million and release from prison." (Docket No. 8 at 8).

Now before the court for a report and recommendation is Defendants' Combined Motion to Dismiss and Memorandum Brief in Support of Motion to Dismiss (Docket No. 15) in which defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the following grounds: (1) to the extent they are sued in their official capacities for damages, they are immune from liability; (2) plaintiff has not alleged personal participation on behalf of Warden Hartley; (3) plaintiff failed to state a claim for damages by failing to make any allegation of physical injury; (4) to the extent plaintiff requests injunctive relief, his claim fails; and (5) defendants are entitled to qualified immunity. Plaintiff filed a response to defendants' motion. (Docket No. 22). The court has reviewed the motion and response thereto and has considered applicable Federal Rules of Civil Procedure, case law, and statutes, as well as the court's file. The court now being fulling informed makes the following findings, conclusions of law, and

recommendation.

Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the
> subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction,
> federal courts may only adjudicate cases that the Constitution and
> Congress have granted them authority to hear. *See* U.S. CONST. art. III,
> § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes
> conferring jurisdiction on federal courts are to be strictly construed. *See F
> & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule
> 12(b)(1) motion to dismiss "must be determined from the allegations of
> fact in the complaint, without regard to mere conclusory allegations of
> jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
> The burden of establishing subject matter jurisdiction is on the party
> asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d
> 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.
> First, if a party attacks the facial sufficiency of the complaint, the court
> must accept the allegations of the complaint as true. *See Holt v. United
> States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks
> the factual assertions regarding subject matter jurisdiction through
> affidavits and other documents, the court may make its own findings of
> fact. *See id.* at 1003. A court's consideration of evidence outside the
> pleadings will not convert the the motion to dismiss to a motion for
> summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154

F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir.

1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts

to state a claim to relief that is plausible on its face.'" <u>Cutter v. RailAmerica, Inc.</u>, 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> 1965.  "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting <u>Bell Atlantic Corp.</u>, 127 S.Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  <u>See Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  <u>Id.</u>

With the above standards in mind, this court will review defendants' arguments for dismissal of the Amended Prisoner Complaint.

**1. Official Capacity Claims**

Plaintiff does not specify in his Amended Prisoner Complaint (Docket No. 8) whether he is suing defendants in their individual and/or official capacities. Defendants first assert that to the extent they are sued in their official capacities for damages, they are immune from liability.  In his response, plaintiff asserts that "[d]efendants are being sued in their individual and official capacities thusly [sic] they are not immune from liability - The immunity conferred by the 11th Amendment extends only to the state it's [sic] instrumentalities and it's officers in their official capacities."  (Docket No. 22 at 3).

"[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, it is recommended that any claim for damages against the defendants in their official capacities be dismissed with prejudice.

**2.  Personal Participation**

Defendants next assert that the plaintiff has not alleged personal participation on behalf of Warden Hartley.  Defendants contend that

> [t]he allegations against Hartley are that he answered a letter associated with [plaintiff's] claim which resulted in [plaintiff's] reinstatement into the computer class. [Plaintiff] then, in conclusory fashion, alleges that "Warden Hartley is the head administrator who had the last word on the grievance procedure also, who allowed me to be punished after Aug 29. for attending Juma Services."  (Doc. #8 at

p. 4).

These allegations are insufficient to impose liability on Hartley. Officials who are not personally involved in the alleged violation are not subject to a civil rights claim under a *respondeat superior* theory merely because they hold positions of authority. . . .  The act of sending a written notification, such as a grievance or a letter to a supervisor complaining about an employee's conduct, does not establish the supervisor's personal participation in the violations.  In addition, a denial of a grievance alone is insufficient to establish personal participation when constitutional violations are alleged. . . . Accordingly, [plaintiff's] claim as it relates to Hartley fails for personal participation.

(Docket No. 15 at 4-5).

Plaintiff asserts in response:

I recieved [sic] a C.O.P.D. conviction for failure to work I was subjected to punitive segregation for 25 days.  The Defendant Vicki Jarrett submitted the C.O.P.D. conviction (write-up) after she fired me. In order that my loss of privilidges [sic] and punitive segregation be implemented the warden signed off on the disposition of charges: being the Head Administrator.  He knew I'd been wrongly fired twice, and that after Major James Day had consulted with D.O.C. Education Dept. Headquarters, whom said I by rule am allowed to attend and have an opportunity for education. Miss Jarrett and Warden Hartley didn't let me rejoin class after the Aug 28, 2007 Memorandum from the Programs Manager which clearly let them know that D.O.C. Education Dept Headquarter had clarified regarding rules concerning Juma service.  Warden Hartley went ahead and let her exclude me from class and he also sent me to punitive seg for 25 days.

(Docket No. 22 at 4).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).  As the Tenth

Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Reading the Amended Prisoner Complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged the requisite affirmative link between Warden Hartley's conduct and the alleged constitutional violation. Allegations that the Warden was the "Head Administrator" and was sent a grievance and/or correspondence is not sufficient to establish his personal participation in a constitutional

violation.  See Walker v. Meyer, 2009 WL 961490, *4 (D. Colo. Apr. 7, 2009) ("[M]ere

participation in the grievance process is an insufficient basis for asserting a violation of

constitutional rights. . . .  The 'mere involvement of processing a grievance at an

administrative level does not establish the affirmative link required to establish

supervisor liability for an employee's conduct.'") (quoting Boles v. Dansdill, 2007 WL

2770473 , *4 (D. Colo. Sept. 20, 2007)).  "To hold a supervisory prison official liable on

the basis of communications he received, 'would be to hold any well informed [prison

official] personally liable for damages flowing from any constitutional violation occurring

at any jail within that [official's] jurisdiction.  We believe that such a broad theory of

liability is inconsistent with the personal responsibility requirement for . . . a section 1983

action.'"  Walker v. Meyer, 2009 WL 961490, *4 (quoting Crowder v. Lash, 687 F.2d

996, 1005-06 (7th Cir. 1982)).

Therefore, this court finds that the Amended Prisoner Complaint lacks allegations

sufficient to establish Warden Hartley's supervisory liability under controlling law.

Therefore, it is recommended that the Amended Prisoner Complaint be dismissed as

against defendant Hartley.

## 3.  Lack of Physical Injury

Next, pursuant to the Prison Litigation Reform Act ("PLRA"), namely, 42

U.S.C. § 1997e(e), defendants assert that the plaintiff has failed to state a claim for

damages.  Section 1997e(e) provides that "[n]o Federal civil action may be brought

by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical

injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its
> clear damages restrictions on the basis of the underlying rights being
> asserted. The underlying substantive violation . . . should not be
> divorced from the resulting injury, such as "mental or emotional
> injury," thus avoiding the clear mandate of § 1997e(e). The statute
> limits the remedies available, regardless of the rights asserted, if the
> only injuries are mental emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001).

Here, defendants correctly assert that the plaintiff has failed to allege any
physical injury, and thus any claim for compensatory damages fails as a matter of
law pursuant to the PLRA. Furthermore, under existing precedent, any claim for
nominal or punitive damages and injunctive relief would survive. Id. at 878-79;
Phillips v. Steinbeck, 2008 WL 821789, 21 (D. Colo. Mar. 26, 2008) ("Based on the
prior precedents of the Tenth Circuit, this Court holds that § 1997e(e) does not bar
Plaintiff's claims for injunctive relief or punitive and nominal damages based on the
alleged violations of Plaintiff's right of access to the courts and Eighth Amendment
rights.") (Recommendation by Magistrate Judge Mix accepted by Judge Miller).

Defendants further note, however, that the plaintiff has not specifically
requested nominal or punitive damages. In the Amended Prisoner Complaint,
plaintiff requests "$50 million and release from prison" as relief in this case.
(Docket No. 8 at 8). Defendants contend that a general prayer for relief is not
sufficient. (Docket No. 15 at 6 n.1). Plaintiff responds in pertinent part:

> Plaintiffs [sic] request for relief, be it nominal punitive, declarative, or
> injunctive was requested (pre-discovery) and not "late in the day."
> The pro-se request for damages of cash and release that was a part
> of the original complaint should get a liberal reading to mean any and
> all damages available that might take the form of 50 million dollars.

(Docket No. 22 at 5).

The court notes that Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Furthermore, this case is still at its early stages, and Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give live [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, if the Amended Prisoner Complaint were to survive the dismissal motion on any of the other grounds raised, it would be recommended that rather than dismissing the entire case on this ground, that the plaintiff be given an opportunity to amend his Amended Prisoner Complaint to add claims for nominal and punitive damages. See Sanders v. Yeager, 57 Fed.Appx. 381 (10th Cir. 2003) (inmate entitled to amend his complaint to add claim for compensatory and punitive damages).

**4. Injunctive Relief**

Defendants next assert that to the extent the plaintiff seeks injunctive relief, namely, "release from prison," his claim fails because the named defendants are without authority to provide the plaintiff with such relief. This court agrees with defendants' assertion. See § 17-22.5-103, C.R.S. ("No inmate shall be discharged from the department until he has remained the full term for which he was sentenced, to be computed on and after the day on which he was received into the same and excluding any time the inmate may have been at large by reason of escape therefrom, unless he is pardoned or otherwise released by legal authority."). A claim for release from confinement is not cognizable in a § 1983 action. See Rowe v. Lane, 2007 WL 2840382 (W.D. Okla. Sept. 27, 2007).

**5. Qualified Immunity**

Finally, the defendants assert that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Id. When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).

Here, defendants argue that plaintiff meets neither prong, asserting:

First, [plaintiff] was not prevented from attending religious services. Jarrett simply gave him a choice between continuing in the computer program and attending services. In addition, prison officials are not

required to make special accommodations to allow inmates to attend
religious services if that the [sic] decision is based on legitimate
penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342
(1987) (Prison's refusal to excuse inmates from work for religious
services on Friday afternoons or on religious holidays was upheld
under legitimate penological standard, even though this precluded
them from attending Jumu'ah, a Muslim congregational religious
service. The Koran commands attendance at Jumu'ah every Friday.
Attendance is mandatory, cannot be made up, and cannot be
performed in the individual's cell. Nevertheless, the prison's interest
in security justified the regulation). Thus, the State has no duty to
allow Muslims to leave their assigned jobs to attend weekly service on
Friday afternoons. <u>Woods v. Evatt</u>, 876 F. Supp. 756 (1995).
Accordingly, [plaintiff] fails to demonstrate a violation of a
constitutional right. Thus, the inquiry with respect to qualified
immunity is at an end.

(Docket No. 15 at 8-9). Defendants next assert that even assuming the plaintiff

has demonstrated a violation of his constitutional rights, they are nevertheless

entitled to qualified immunity because their actions did not violate clearly

established law. Defendants contend that "[t]here is no clearly established law

dictating that prison officials must allow inmates to leave prison jobs and programs

to attend religious services. Accordingly, the Defendants are entitled to qualified

immunity." (Docket No. 15 at 10). This court agrees with defendants' arguments

based upon the U.S. Supreme Court's decision in <u>O'Lone v. Estate of Shabazz</u>,

482 U.S. 342 (1987).

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of

their conviction and confinement in prison." <u>Bell v. Wolfish</u>, 441 U.S. 520, 545

(1979). "Inmates clearly retain protections afforded by the First Amendment, . . .

including its directive that no law shall prohibit the exercise of religion." <u>O'Lone</u>,

482 U.S. at 348 (1987) (citations omitted). Nevertheless, "[l]awful incarceration

brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." <u>O'Lone</u>, 482 U.S. at 348. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Id.</u> at 349 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). "This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,' . . . and avoid unnecessary intrusion of the judiciary into problems particularly ill suited to 'resolution by decree.'" <u>Id.</u> (citations omitted). "Although the *Turner* case specifically dealt only with prison regulations, the Tenth Circuit has applied this test to actions taken by prison officials as well." <u>Howard v. United States</u>, 864 F. Supp. 1019, 1025 (D. Colo. 1994) (citing <u>Frazier v. Dubois</u>, 922 F.2d 560, 562 (10th Cir. 1990)).

In <u>O'Lone</u>, the plaintiffs similarly challenged their inability to attend Jumu'ah, a weekly Muslim congregational service, and the Court stated that

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time. But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service. **While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological**

**objectives to that end.** . . .

O'Lone, 482 U.S. at 351 (emphasis added).  Based upon O'Lone, this court finds

that the plaintiff has failed to state a constitutional violation, see Brown v. Ridge,

2006 WL 1581167 (W.D. La. Jan. 16, 2006) ("[P]laintiff's complaint as it relates to

the ability of Muslim inmates to attend Friday 'Jumah Prayer Service' fails to state

a constitutional violation."), or at the very least that reasonable persons in

defendants' position would not have known their conduct violated a constitutional

right.  Therefore, defendants are entitled to qualified immunity.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 15) be granted.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the
parties have ten (10) days after service of this recommendation to serve and file
written, specific objections to the above recommendation with the District Judge
assigned to the case.  The District Judge need not consider frivolous, conclusive,
or general objections.  A party's failure to file and serve such written, specific
objections waives *de novo* review of the recommendation by the District Judge,
Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of
both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183
F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir.
1996).**

Date:  June 17, 2009                          s/ Michael J. Watanabe
      Denver, Colorado                   Michael J. Watanabe
                                United States Magistrate Judge